UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| CAMERON YEE,<br>        Defendant. | No. 5:22-cr-140 |

**MOTION FOR PRE-TRIAL DETENTION**

The United States of America, by its attorney, Nikolas P. Kerest, United States Attorney for the District of Vermont, hereby moves for pretrial detention of the above-named defendant pursuant to 18 U.S.C. § 3142(e) and (f).

1. <u>Eligibility for Detention</u>.  This defendant is eligible for detention because he is charged with felony involving the possession of a firearm.  18 U.S.C. § 3142(f)(1)(E).

The Indictment alleges that Yee violated 18 U.S.C. § 922(a)(6) by making a false statement to a federally licensed firearm dealer in connection with the acquisition of a .40 caliber Glock handgun.  The offense therefore involves the possession of a firearm.  *See United States v. Gaston,* 2021 WL 1170201, at *3-4 (N.D. Ind. March 26, 2021) (holding that "acquisition" as used in 18 U.S.C. § 922(a)(6) encompasses possession as used in 18 U.S.C. § 3142(f)(1)(E)); *see also United States v. Watkins,* 940 F.3d 152, 167 (2d Cir. 2019) (The phrase "that involves" in §3142(f)(1) "warrants a conduct-specific inquiry in which the judicial officer may look beyond the elements of the charged offense to consider the actual conduct underlying the arrestee's charged offense.").  As shown below, the charged offense involved the possession of the Glock by Yee and another person.  This case therefore falls within the scope of § 3142(f)(1)(E).

2.  <u>Reason For Detention</u>.  The Court should detain the defendant because there are no conditions of release that will reasonably assure the safety of the community.  The factors listed in 18 U.S.C. § 3142(g) weigh in favor of detention.

The nature and circumstances of the charged offense are very serious.  Yee purchased the Glock .40 from a South Burlington gun store on October 11.  He falsely stated on the ATF form 4473 that he was the actual purchaser/transferee.  In truth, as Yee admitted to police, he had been given $2000 to purchase two handguns by a person Yee knew as "Jay," with the understanding that Jay would receive the .40 caliber weapon.  Yee admitted he understood Jay wanted the weapon because Jay was in a disagreement with another person over the treatment of Jay's sister.  Yee admitted learning that Jay had been shot and killed shortly after Yee supplied Jay with the gun.

The Glock .40 was recovered by Springfield, Massachusetts police when they responded to a report of a shooting shortly after 4am on October 12 – less than 24 hours after Yee acquired the gun for "Jay."  The gun was next to Andre Yarns, who was bleeding from gunshot wounds from which he later died.  The evidence indicates Yarns and another person (who also died from gunshot wounds) were involved in a shootout in Springfield.  Telephone records confirm that Yee and Yarns had been in regular communication in the days preceding Yee's acquisition of the Glock.  Yarns was not able to legally purchase a firearm due to his criminal history.

Additional phone data indicates that Yarns was a source of crack and powder cocaine for Yee (and another member of Yee's family).  Indeed, during an October 10, 2022, text exchange between Yee and Yarns (obtained from Yee's phone), Yarns advised Yee that Yarns had supplied "the ball i had for u" to another member of Yee's family.  After Yee expressed dismay, he asked Yarns "Do u have any soft"?  As the Court is aware, the term "ball" commonly refers to

an eighth of an ounce quantity of crack cocaine and "soft" refers to powder cocaine.  That Yee

was prepared to acquire a .40 caliber Glock handgun for a source of cocaine who was in a beef

with another person, is a strong indicator of dangerousness.  The United States understands that

Yee has recently undergone substance abuse treatment.  But to the extent that Yee may have

been a user of cocaine at the time he acquired the handguns would also constitute another federal

offense.

The charged offense – involving the purchase of a handgun under false pretenses, and

that gun being used in a deadly shootout less than 24 hours later – is serious and shows that Yee

presents a danger that cannot be addressed with conditions.

Furthermore, the evidence against Yee includes Yee's admission that he purchased the

gun for "Jay" with the money "Jay" supplied, the discovery of the gun less than 24 hours later at

the Springfield crime scene, as well as the ATF form Yee filled out falsely when he acquired the

gun.

With regard to Yee's history and characteristics, while his criminal history does not

include convictions, earlier this month (after the date of the charged offense) Yee was charged in

Chittenden Superior Court with Aggravated Domestic Assault. The portion of the charging

affidavit that relates the victim's experience is excerpted below:

4. After reviewing the Axon video obtained from Officer Willingham's body camera. It should be noted prior to questioning ▇▇▇▇ showed having difficulty catching her breath prior to starting to cry hysterically. When asked what happened ▇▇▇▇ stated "He would not get off of me." Officer Willingham asked how did the argument start ▇▇▇▇ stated "because he wants to be with me and I don't want to be with him." ▇▇▇▇ stated "he wouldn't stop yelling at me so I threw a book at the TV, and he threw cereal at me." ▇▇▇▇ then stated "he held me down with a hand around my throat." ▇▇▇▇ admitted to biting Yee during the assault. Officer Willingham asked ▇▇▇▇ a series of clarifying questions such as was it one hand or two? ▇▇▇▇ replied "two." Officer Willingham asked did you feel like you were losing air circulation? ▇▇▇▇ replied "Yes." Officer Willingham asked did you feel pain on a scale from one being a little to ten being a lot what did you feel ▇▇▇▇ replied a "five or six." Officer Willingham asked did you feel your life was in danger? ▇▇▇▇ stated "yes." ▇▇▇▇ stated after getting up from being held down she grabbed a knife to keep Yee away from her. ▇▇▇▇ stands at five foot two and weight approximately 110 pounds.

To be sure, Yee has spent much of his life in Vermont, and, as noted above, his criminal history does not appear to include felony convictions. But Yee's recent incidents of criminal activity, including the above-described assault of his ex-girlfriend, paint a picture of a young man engaged in a pattern of dangerous and criminal decision-making. Furthermore, Yee admitted to acquiring another Glock handgun in South Burlington at the same time he purchased the gun found next to Yarns in Springfield. The whereabouts of that second gun remains unknown; Yee claimed to police that gun had been stolen.

3. <u>Time for Detention Hearing.</u> The United States requests the Court to conduct the detention hearing at Yee's arraignment.

For the foregoing reasons Yee presents a danger that cannot be addressed by conditions. He should be detained.

Dated at Burlington, in the District of Vermont, this 30th day of November, 2022.

UNITED STATES OF AMERICA

NIKOLAS P. KEREST
United States Attorney

By:   */s/ Michael P. Drescher*
Michael P. Drescher
Assistant U.S. Attorney
P.O. Box 570
Burlington VT 05402-0570
(802) 951-6725